UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA BROOKS,<br><br>               Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>               Defendant. | Case No. CV 11-8645-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS |

**PROCEEDINGS**

On October 25, 2011, Cynthia Brooks ("Plaintiff") filed a Complaint seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance benefits. The Commissioner filed an Answer on January 24, 2012. On June 5, 2012, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the undersigned Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be reversed and remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

## BACKGROUND

Plaintiff was born on December 21, 1947, and was 55 years old on her alleged disability onset date of May 18, 2003. (AR 111.) Plaintiff filed an application for Social Security Disability Insurance benefits on June 10, 2009 (AR 111-12), and claims she is disabled due to problems with her back, shoulders, and elbow. (AR 153.) Plaintiff has not engaged in substantial gainful activity from her alleged onset date of May 18, 2003, through her date last insured of December 31, 2008. (AR 12.)

Plaintiff's claim was denied initially on September 10, 2009 (AR 64-67), and upon reconsideration on December 16, 2009. (AR 69-73.) Plaintiff then filed a timely request for hearing on January 21, 2010. (AR 74.) Plaintiff appeared with counsel and testified at a hearing held on December 1, 2010, before Administrative Law Judge ("ALJ") Kevin McCormick. (AR 38-61.) The ALJ issued a decision denying benefits on March 31, 2011. (AR 10-17.) The Appeals Council denied review on September 15, 2011. (AR 1-4.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, there are three disputed issues:

(1) whether the ALJ properly evaluated the opinion of treating physician Dr. Kharrazi;

(2) whether the ALJ posed a complete hypothetical question to the vocational expert; and

(3) whether the ALJ properly determined that Plaintiff could perform her past relevant work as a home attendant.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an

impairment listed, in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix I. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must account for all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

   The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

**THE ALJ'S DECISION**

In this case, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date of May 18, 2003, through her date last insured of December 31, 2008. (AR 12.)

At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: "previous evidence of right elbow lateral epicondylitis surgery, right ulnar transposition at the elbow, and right carpal tunnel release in 1983; right shoulder arthralgia/tendinitis with status post right shoulder scope/decompression/excision of the distal clavicle on April 8, 2005; right elbow surgery for lateral epicondylitis [in] December 2005; and left shoulder tendinitis/impingement with status post arthroscopy in February 2008 and a history of asthma." (AR 12.)

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 13.)

The ALJ found that Plaintiff has the RFC to perform light work, "which permits lifting and carrying 10 pounds frequently and 20 pounds occasionally; sitting for 2 hours at one time, standing for 2 hours at one time, and walking for 2 hours at one time for a total of 6 hours sitting out of an 8 hour day. [Plaintiff] is precluded from overhead reaching with the bilateral upper extremities, but can frequently reach in all other positions, handle, finger, and feel. She can frequently use both feet for operation of foot controls. [Plaintiff] is precluded from climbing ladders/scaffolds and from crawling, but can frequently climb ramps/stairs, balance, stoop, kneel and crouch. She is precluded from working at unprotected heights, being around moving mechanical parts, dusts/odors/fumes and pulmonary irritants, and from vibration, but can occasionally operate motor vehicles and be around extreme cold/heat, and can frequently be around humidity and wetness." (AR 13.)

At step four, the ALJ determined that Plaintiff could perform her past relevant work as a home attendant. (AR 17.) The ALJ therefore concluded that Plaintiff is not disabled. (AR 17.)

## DISCUSSION

**The ALJ Improperly Evaluated Dr. Kharrazi's Opinion**

Plaintiff argues that the ALJ improperly assessed Dr. Kharrazi's opinion. Dr. Kharrazi evaluated Plaintiff under the rubric of the California Workers' Compensation system, and the ALJ was required to translate the limitations assessed by Dr. Kharrazi into his assessment of Plaintiff's RFC. The ALJ did not do so.

### A.   Relevant Law

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Id. at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining

1  physician's opinion is supported by different, independent clinical findings.  See Andrews v.
2  Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632.  Similarly, to reject an
3  uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing
4  reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining
5  physician's opinion is contradicted by another physician's opinion, an ALJ must provide
6  specific and legitimate reasons to reject it.  Id.  However, "[t]he opinion of a non-examining
7  physician cannot by itself constitute substantial evidence that justifies the rejection of the
8  opinion of either an examining physician or a treating physician"; such an opinion may serve
9  as substantial evidence only when it is consistent with and supported by other independent
10 evidence in the record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

11      As noted above, Dr. Kharrazi evaluated Plaintiff as part of her workers' compensation
12 case.  The terms of art used in California workers' compensation cases are not equivalent to
13 Social Security disability terminology, but an ALJ may not ignore physicians' opinions from a
14 workers' compensation case.  Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104-05 (C.D. Cal.
15 2002); see Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).
16 Instead, the ALJ must "translate" terms of art contained in these physicians' reports and
17 opinions into corresponding Social Security terminology.  Booth, 181 F. Supp. 2d at 1106;
18 see Macri v. Chater, 93 F.3d 540, 543-44 (9th Cir. 1996).

19      **B.      Analysis**

20      Dr. Kharrazi evaluated and treated Plaintiff numerous times throughout her workers'
21 compensation case, beginning in January 2005.  (AR 370-81.)  He wrote permanent and
22 stationary reports regarding her right shoulder and elbow on December 6, 2007 (AR 321-22),
23 and regarding her left shoulder on May 7, 2009.  (AR 252-57.)  With respect to Plaintiff's right
24 shoulder and elbow, Dr. Kharrazi diagnosed her with (1) right shoulder status post
25 arthroscopy for decompression secondary to impingement, and (2) right elbow lateral
26 epicondylitis status post right elbow lateral epicondylar debridement.  (AR 321.)  He opined
27 that Plaintiff was precluded from heavy lifting, "repetitive use of her right upper extremity,"
28

and forceful pushing and pulling. (AR 322.) With respect to her left shoulder, Dr. Kharrazi diagnosed Plaintiff with "rotator cuff tendinitis, subacromial bursitis, impingement, status post excision of scar tissue . . . on February 15, 2008." (AR 255.) He opined that Plaintiff could perform "no overhead work, no forceful pushing or pulling, . . . no repetitive use, [and] no heavy lifting." (AR 256.)

The ALJ referred to Dr. Kharrazi's reports and concluded that they "essentially support the [RFC] determination." (AR 16.) Plaintiff argues that Dr. Kharrazi's opinion that Plaintiff was precluded from using her right shoulder and elbow and left arm on a "repetitive" basis is inconsistent with the ALJ's finding that she was capable of performing "frequent" handling, fingering, feeling and reaching.[2] Plaintiff's argument has merit. "Repetitive" is a term of art in the California Workers' Compensation system, meaning that an individual has lost 50% of her pre-injury capacity. See California Department of Industrial Relations, Division of Workers' Compensation, Schedule for Rating Permanent Disabilities under the Provisions of the Labor Code of the State of California 1-13, 2-14 (1997), available at http://www.dir.ca.gov/dwc/PDR1997.pdf. The ALJ made no effort to translate this term into Social Security terminology, and his conclusory assertion that Dr. Kharrazi's opinion "essentially support[s] the [RFC] determination" (AR 16) does not suffice. Assuming Plaintiff's pre-injury capacity for using her shoulders and elbow was 100%, she could use them no more than 50% of the time in Dr. Kharrazi's opinion. "Frequent" for Social Security purposes means from one-third to two-thirds of the time. SSR 83-10. Thus, in Dr. Kharrazi's view, Plaintiff does not have the capacity to use her shoulders and elbow frequently because she is not capable of using them between one-half and two-thirds of the time. Presumably,

---

[2]Plaintiff does not specifically address the ALJ's finding that she could perform frequent reaching. The Court nonetheless addresses this related issue.

1 "using" her shoulders and elbow would entail reaching and handling, if not fingering and
2 feeling.[3] Thus, the ALJ implicitly rejected this aspect of Dr. Kharrazi's opinion.

3       The rejection stands if the ALJ provided specific and legitimate reasons to support it.
4 He did not. The ALJ provided two reasons for discounting Dr. Kharrazi's opinion. First, he
5 asserted that certain of Dr. Kharrazi's opinions were "quite conclusory and are of no
6 probative value." (AR 16.) That description does not apply to the permanent and stationary
7 reports at issue here. Both are well supported – by Dr. Kharrazi's extensive history of
8 treating Plaintiff as well as his examinations concurrent with the reports – and well explained.
9 (See AR 252-57, 321-22.) Next, the ALJ surmised that it was "possible" that Dr. Kharrazi's
10 opinions referred "solely to [Plaintiff's] inability to perform past work as a driver with the
11 various transportation companies which would not be inconsistent with the conclusion
12 reached in this decision." (AR 16.) Nothing in Dr. Kharrazi's reports suggests that his
13 assessment of Plaintiff's work restrictions was applicable only to her past work as a driver.
14 To the contrary, the reports refer to Plaintiff's work restrictions in performing any type of job.
15 (See AR 256, 322.) Thus, the ALJ has not provided specific and legitimate reasons to
16 discount Dr. Kharrazi's opinions.

17       Remand is warranted for the ALJ to accurately evaluate Dr. Kharrazi's opinions and
18 translate his assessments into Social Security terminology. As Plaintiff's arguments make
19 clear, reassessment of Dr. Kharrazi's opinions may require the ALJ to pose a new
20 hypothetical question to the vocational expert, revisit his step four determination, and
21 possibly proceed to step five of the sequential evaluation.

---

[3] As used in the Dictionary of Occupational Titles, handling and reaching would likely entail use of the shoulders and elbow. Handling means "[s]eizing, holding, grasping, turning, or otherwise working with hand or hands." Reaching means "[e]xtending hand(s) and arm(s) in any direction." Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C (1993). It is less clear that fingering or feeling would involve use of the shoulders or elbow. Fingering means "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling." Feeling means "[p]erceiving attributes of objects, such as size, shape, temperature, or texture, by touching with skin, particularly that of fingertips." Id.

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is REVERSED and REMANDED for further proceedings in accordance with this Memorandum Opinion and Order and with law.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 22, 2012                          */s/ John E. McDermott*
                                                                JOHN E. MCDERMOTT
                                                                UNITED STATES MAGISTRATE JUDGE